IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MATTHEW FENWICK, on behalf of himself and all similarly situated employees,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**M STREET ENTERTAINMENT, LLC; KAYNE PRIME, LLC; MOTO, LLC; 1120, LLC d/b/a SAINT AÑEJO; LIME, LLC d/b/a TAVERN MIDTOWN; VIRAGO, LLC; and WK, LLC d/b/a WHISKEY KITCHEN,**<br><br>    **Defendants.** | Case No. _____<br><br><br>**COLLECTIVE ACTION**<br><br><br>**JURY DEMAND** |

## COLLECTIVE-ACTION COMPLAINT

For his Collective-Action Complaint ("Complaint") under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–19, against Defendants M Street Entertainment, LLC ("M Street"), Kayne Prime, LLC ("Kayne Prime"), Moto, LLC ("Moto"), 1120, LLC d/b/a Saint Añejo ("Saint Añejo"), Lime, LLC d/b/a Tavern Midtown ("Tavern"), Virago, LLC ("Virago"), and WK, LLC d/b/a Whiskey Kitchen ("Whiskey Kitchen") (collectively, "Defendants" or "M Street Group"), Plaintiff Matthew Fenwick ("Fenwick"), on behalf of himself and all other similarly situated employees, states as follows:

### INTRODUCTION

1. Fenwick files this collective action, on behalf of himself and all similarly situated employees, to remedy violations of the FLSA by the M Street Group.

2. This collective action seeks to recover unpaid minimum wages for Fenwick, as well as all similarly situated current and former tipped employees who worked for the M Street Group

within 3 years prior to the filing of this Complaint.

3. M Street Group paid Fenwick and those he seeks to represent a direct, cash hourly wage lower than $7.25 per hour under the tip-credit provisions of the FLSA. Defendants, however, failed to satisfy the requirements for utilizing the tip credit to meet their minimum-wage and overtime obligations to their tipped employees by: (1) retaining a portion of tips earned by their employees each shift; (2) shifting business expenses to tipped employees by requiring them to purchase uniforms and equipment; (3) requiring tipped employees to share tips with non-tipped employees who have no customer interaction; (4) requiring tipped employees to perform compensable work without compensation; and (5) requiring tipped employees to spend more than 20% of their shifts performing non-tip-producing work while paid at the lower, tipped hourly rate.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction. Fenwick's claims arise under the laws of the United States, namely the FLSA, 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over M Street; the company does business in this District, specifically in Nashville, Tennessee.

6. This Court has personal jurisdiction over Kayne Prime; the company does business in this District, specifically in Nashville, Tennessee.

7. This Court has personal jurisdiction over Moto; the company does business in this District, specifically in Nashville, Tennessee.

8. This Court has personal jurisdiction over Saint Añejo; the company does business in this District, specifically in Nashville, Tennessee.

9. This Court has personal jurisdiction over Tavern; the company does business in this District, specifically in Nashville, Tennessee.

10. This Court has personal jurisdiction over Virago; the company does business in this District, specifically in Nashville, Tennessee.

11. This Court has personal jurisdiction over Whiskey Kitchen; the company does business in this District, specifically in Nashville, Tennessee.

12. Venue is proper in this Court. A substantial part of the events giving rise to this action occurred within this District, and Defendants do business in this District, *id.* § 1391(b).

## PARTIES

13. Fenwick is an individual; he resides in Sumner County, Tennessee.

14. M Street is a for-profit company, organized under the laws of Tennessee and registered to do business in Tennessee.

15. M Street owns and operates six restaurants in Nashville, specifically Kayne Prime, Moto, Saint Añejo, Tavern, Virago, and Whiskey Kitchen.

16. M Street is located at 1207D McGavock Street, Nashville, TN 37203.

17. M Street's registered agent for service of process is Chris Hyndman, 1207D McGavock Street, Nashville, TN 37203.

18. Kayne Prime is for-profit company, organized under the laws of Tennessee and registered to do business in Tennessee

19. Kayne Prime is a restaurant in Nashville, located at 1103 McGavock Street.

20. Kayne Prime's registered agent for service of process is Chris Hyndman, 1207D McGavock Street, Nashville, TN 37203.

21. Moto is a for-profit company, organized under the laws of Tennessee and registered to do business in Tennessee.

22. Moto is a restaurant in Nashville, located at 1120 McGavock Street.

23. Moto's registered agent for service of process is Christopher W. Hyndman, 1207D McGavock Street, Nashville, TN 37203.

24. Saint Añejo is a for-profit company, organized under the laws of Tennessee and registered to do business in Tennessee.

25. Saint Añejo is a restaurant in Nashville, located at 1120 McGavock Street.

26. Saint Añejo's registered agent for service of process is Chris Hyndman, 1207D McGavock Street, Nashville, TN 37203.

27. Tavern is a for-profit company, organized under the laws of Tennessee and registered to do business in Tennessee.

28. Tavern is a restaurant in Nashville, located at 1904 Broadway.

29. Tavern's registered agent for service of process is Chris Hyndman, 1207D McGavock Street, Nashville, TN 37203

30. Virago is a for-profit company, organized under the laws of Tennessee and registered to do business in Tennessee.

31. Virago is a restaurant, located at 1120 McGavock Street.

32. Virago's registered agent for service of process is Chris Hyndman, 1207D McGavock Street, Nashville, TN 37203.

33. Whiskey Kitchen is a for-profit company, organized under the laws of Tennessee and registered to do business in Tennessee.

34. Whiskey Kitchen is restaurant in Nashville, located at 118 12th Avenue South.

35. Whiskey Kitchen's registered agent for service of process is Chris Hyndman, 1207D McGavock Street, Nashville, TN 37203.

## EMPLOYER-EMPLOYEE ALLEGATIONS

36. Defendants form a single employer for purposes of liability under the FLSA, which Fenwick refers to as the M Street Group.

37. Defendants share a common owner, Christopher W. Hyndman ("Hyndman").

38. Defendants share common management employees.

39. Defendants share common corporate officers.

40. Hyndman exercises centralized control over labor relations for all Defendants.

41. Hyndman is responsible for Defendants' timekeeping and tip-sharing policies.

42. Hyndman is responsible for maintaining personnel records for all Defendants.

43. Inter-company transfers and promotions of personnel within the M Street Group are common.

44. There is a significant overlap of financial control and ownership for all Defendants.

45. The M Street Group conducts centralized training sessions for new employees for all six restaurants.

46. Because the M Street Group is a single employer for FLSA purposes, M Street, Kayne Prime, Moto, Saint Añejo, Tavern, Virago, and Whiskey Kitchen all employed Fenwick for purposes of his FLSA claims.

47. At all relevant times, Fenwick was an employee of Defendants under the FLSA. *Id.* § 203(e)(1).

48. At all relevant times, Defendants were Fenwick's employer under the FLSA. *Id.* § 203(d).

49. At all relevant times, Defendants maintained control, oversight, and direction over Fenwick and all similarly situated tipped employees, including timekeeping, payroll, tipping, and

other employment practices that applied to them.

50. M Street's annual gross volume of business exceeds $500,000. *Id.* § 203(s)(A)(ii).

51. Kayne Prime's annual gross volume of business exceeds $500,000. *Id.*

52. Moto's annual gross volume of business exceeds $500,000. *Id.*

53. Saint Añejo's annual gross volume of business exceeds $500,000. *Id.*

54. Tavern's annual gross volume of business exceeds $500,000. *Id.*

55. Virago's annual gross volume of business exceeds $500,000. *Id.*

56. Whiskey Kitchen's annual gross volume of business exceeds $500,000. *Id.*

## COLLECTIVE-ACTION ALLEGATIONS

57. Fenwick brings this collective action under 29 U.S.C. § 216(b) on behalf of himself and all similarly situated current and former tipped employees of Defendants.

58. There are dozens of current and former tipped employees who are similarly situated to Fenwick and who Defendants denied minimum wages.

59. Defendants unlawfully required Fenwick, as well as other individuals employed as tipped employees, to work off the clock studying Defendants' menus; to pay out of pocket for tools of the trade; and to contribute their tips to invalid tip-sharing arrangements.

60. Fenwick seek to proceed collectively under § 216(b) on behalf of themselves and the following collective of persons: **All current and former tipped employees who worked for Defendants between May 13, 2017, and the present** ("Putative Collective").

61. Defendants were aware or should have been aware that federal law requires them to pay Fenwick and the Putative Collective members at least the applicable minimum wage for all hours worked.

62. Defendants were aware or should have been aware that federal law prohibits them

from requiring Fenwick and the Putative Collective members to purchase tools of the trade without reimbursement.

63. Defendants were aware or should have been aware that federal law prohibits them from requiring Fenwick and the Putative Collective members to contribute their tips to invalid tip-sharing arrangements.

64. Defendants applied the same unlawful policies and practices to all their tipped employees.

65. The Putative Collective is readily identifiable and locatable within Defendants' business records.

66. The Putative Collective should be notified of and allowed to join this collective action under § 216(b).

67. Unless the Court promptly issues notice to the Putative Collective, its members will not be able to secure the compensation to which they are entitled.

## FACTS

68. Plaintiff Fenwick worked as a server at Tavern from approximately January 2019 until February 2019.

69. Defendants paid Plaintiff Fenwick a direct, cash wage of less than $7.25 per hour for all hours worked as a server at Tavern.

70. Defendants claimed the maximum tip credit of $5.12 per hour for every recorded hour that Plaintiff Fenwick worked as a server at Tavern.

71. The tip-credit and minimum-wage provisions of the FLSA apply to Defendants. 29 U.S.C. §§ 203(m), 206.

72. Defendants employ several kinds of tipped employees at the M Street Group.

73. Defendants employ tipped employees as bartenders, servers, and server assistants.

74. Job duties for Defendants' bartenders include but are not limited to greeting and serving customers at the bar and making drinks for servers to distribute to other customers.

75. Job duties for Defendants' servers include but are not limited to greeting and serving customers at tables, taking food and drink orders, entering orders into the computer system, and delivering those orders to customers.

76. Job duties for Defendants' server assistants include but are not limited to delivering customers' orders from the kitchen to customers.

77. Defendants apply the same employment policies, practices, and procedures to all their tipped employees, including policies, practices, and procedures regarding tipping and minimum wages.

78. Defendants have a policy of paying all their tipped employees, like Fenwick, a direct, cash wage of less than the federal minimum wage of $7.25 per hour.

79. Defendants have a policy of taking a tip credit to satisfy their minimum-wage and overtime obligations to all their tipped employees, like Fenwick.

80. Because Defendants take a tip credit under the FLSA for all their tipped employees, Defendants must meet all statutory requirements for paying a direct, cash wage amount lower than the statutory $7.25 minimum wage.

81. Defendants do not meet these statutory requirements for taking the tip credit.

82. Defendants retain tips belonging to tipped employees by improperly rounding up to the nearest dollar the amount the tipped employees owe to the restaurants at the end of a shift based on the tipped employees' cash sales during the shift.

83. If tipped employees try to provide exact change to the restaurants for their cash

8

Case 3:20-cv-00403   Document 1   Filed 05/13/20   Page 8 of 14 PageID #: 8

sales to avoid the unlawful rounding, Defendants will not accept the exact amount owed.

84. Retaining any amount of tips belonging to tipped employees disqualifies Defendants from claiming a tip credit.

85. Defendants shift their business expenses to their tipped employees by requiring them to pay for uniforms and equipment.

86. For example, when Plaintiff Fenwick began working as a server at Tavern, Defendants' managers required him to purchase a wine key.

87. Plaintiff Fenwick purchased an initial wine key for approximately $10 or $12.

88. After Plaintiff Fenwick purchased the initial wine key, Defendants' managers told Plaintiff Fenwick that his initial wine key was not the right kind and required him to purchase a second wine key.

89. Plaintiff Fenwick purchased a second wine key for approximately $10 or $12.

90. By requiring tipped employees to purchase uniforms and equipment for their jobs, Defendants cause them to receive less than the statutory minimum wage.

91. Shifting business expenses to tipped employees disqualifies Defendants from claiming a tip credit.

92. Defendants have a policy of requiring all their servers to share tips with non-tipped employees who have no customer interaction, including, for example, bar backs.

93. Bartenders, servers, server assistants, and bar backs participate in the tip-sharing arrangements.

94. Defendants' bar backs have no customer interaction, and their only duty is to stock the bar area with spirits and other supplies.

95. The FLSA does not permit tip-sharing arrangements in which tipped employees

share their tips with non-tipped employees who have no customer interaction.

96. Where there is an invalid tip-sharing arrangement, an employer may not take the tip credit.

97. By requiring tipped employees to share tips with non-tipped employees who have no customer interaction, like bar backs, Defendants are disqualified from taking a tip credit.

98. Defendants did not provide all the required information to their tipped employees before claiming a tip credit.

99. The FLSA requires an employer who claims a tip credit to provide certain information to its tipped employees before taking a tip credit.

100. Defendants' failure to give their tipped employees notice of all the required information disqualifies Defendants from claiming a tip credit.

101. Defendants do not pay their tipped employees for all hours worked.

102. Defendants require non-tipped employees to clock out at the end of shifts to perform non-tip-producing work.

103. For example, Defendants required their severs and bartenders to clock out at the end of their shifts and spend 1.5 to 2.5 hours rolling silverware and performing other non-tip-performing tasks while not clocked in and without compensation.

104. Similarly, Defendants require their tipped employees to study for and to pass a menu test as a condition of employment.

105. Defendants' food and wine menus are extensive.

106. Learning all the required information on Defendants' food and wine menus takes hours of home study.

107. For example, Fenwick spent approximately 6 hours at home studying the food and

drink menus for Tavern to pass his menu test.

108. Defendants' managers send copies of the menus home with newly hired tipped employees for the employees to study.

109. Although Defendants could track the number of hours tipped employees spend studying their menus at home, Defendants do not do so.

110. Defendants do not pay their tipped employees at all for time spent studying the menus at home.

111. Considering Defendants' failure to pay their tipped employees for time spent studying the menus at home, Defendants do not pay the minimum cash wage of $7.25 per hour for every hour worked and therefore cannot claim a tip credit.

112. Defendants also require tipped employees to spend more than 20% of each shift on non-tip-producing tasks while paid at tipped hourly rate of less than $7.25 per hour, including but not limited to rolling silverware, taking out trash, sweeping, mopping, cleaning fixtures, etc.

113. Employers may not take the tip credit when they require employees to spend more than 20% of each shift on non-tip-producing work at a lower tipped hourly rate.

## COUNT I
### Failure to Pay Minimum Wages by All Defendants
### 29 U.S.C. § 206

114. Fenwick incorporate by reference all prior allegations in this Complaint.

115. Fenwick and the Putative Collective members are entitled to be paid at least the applicable minimum wage for all hours worked in a workweek.

116. Defendants employed Fenwick and the Putative Collective members and failed to compensate them for all time worked.

117. Defendants did not meet all § 203(m)'s requirements for claiming a tip credit, as

set forth above.

118. Defendants' violations of the FLSA were willful because Defendants knew or should have known that their timekeeping and pay practices violate the FLSA.

119. Defendants' willful FLSA violations extend the statute of limitations from two years to three years.

120. Defendants have failed to make a good-faith effort to comply with the FLSA regarding payment of minimum wages to Fenwick and the Putative Collective members.

121. As a result of Defendants' violations of the FLSA, Fenwick and the Putative Collective members suffered and continue to suffer damages, namely failing to receive all the minimum wages earned during their employment.

122. In addition to unpaid wages, Defendants owe Fenwick and the Putative Collective members liquidated damages in an amount equal to their unpaid minimum wages.

123. Fenwick and the Putative Collective members are entitled to recovery of their attorneys' fees and costs.

## PRAYER FOR RELIEF

Based on the foregoing, Fenwick pray for the following relief from this Court:

A. Issuing process against Defendants and requiring them to answer within the period provided by law;

B. Requiring Defendants to provide Fenwick and his counsel the names, addresses, phone numbers, and e-mail addresses for the Putative Collective members;

C. Permitting Fenwick and his counsel to issue notice of this collective action to the Putative Collective members;

D. Giving the Putative Collective members the opportunity to join this collective

action by filing written consents;

E. Awarding damages to Fenwick in the amount of his unpaid minimum wages, plus an equal amount of liquidated damages;

F. Awarding damages to all Putative Collective members who join this collective action in the amount of their unpaid minimum wages, plus an equal amount of liquidated damages;

G. Requiring Defendants to pay all attorneys' fees Fenwick and the Putative Collective members incur to bring and to maintain this collective action;

H. Requiring Defendants to pay the costs and expenses of this action;

I. Requiring Defendants to pay any applicable pre-judgment and post-judgment interest; and

J. Granting Fenwick and the Putative Collective members such other, further, and general relief to which they may be entitled.

### JURY DEMAND

Fenwick demands a jury trial.

Dated: May 13, 2020

Respectfully submitted,

/s/ *Charles P. Yezbak, III*
Charles P. Yezbak, III (#018965)
/s/ *N. Chase Teeples*
N. Chase Teeples (#032400)
YEZBAK LAW OFFICES PLLC
2002 Richard Jones Road, Suite B-200
Nashville, TN 37215
Tel.: (615) 250-2000
Fax: (615) 250-2020
yezbak@yezbaklaw.com
teeples@yezbaklaw.com

/s/ *Joshua A. Frank*
DAVID W. GARRISON (No. 24968)
JOSHUA A. FRANK (No. 33294)
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Philips Plaza

414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com

*Attorneys for Plaintiff*